**Gertrude MACK, Plaintiff,**

**v.**

**J. Curtis LEWIS, the Mayor and Aldermen of the City of Savannah, Georgia; Picot Floyd, the City Manager of the City of Savannah, Georgia; Leo B. Ryan, Chief of Police of the City of Savannah, Georgia; Lieutenant J. E. Weaver, Savannah Police Department; Captain C. J. Murphy, Savannah Police Department; Detective H. E. Fields, Savannah Police Department; Detective J. D. Smith, Savannah Police Department; Individually and in their Official Capacities with the City of Savannah, Georgia, Defendants.**

Civ. A. No. 2331.

United States District Court
S. D. Georgia,
Savannah Division.

May 6, 1969.

Bobby L. Hill, E. H. Gadsden, Savannah, Ga., Jack Greenberg, Charles Stephen Ralston, New York City, for plaintiff.

Robert E. Falligant, John W. Sognier, Jack H. User, David R. Elmore, Thomas Edenfield, Robert E. Barker, Savannah, Ga., for defendants.

## ORDER ON MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

LAWRENCE, District Judge.

Louis Mack was slain by Savannah police detectives on the night of April 26, 1968. His mother brings this action for damages for the homicide under the Civil Rights statutes of the United States

and under the Fourteenth Amendment. The defendants are:

1. The Mayor of Savannah
2. The Mayor and Aldermen of Savannah
3. The City Manager
4. The Chief of Police
5. A Lieutenant of Police
6. The Captain of the "Detective Bureau" of the City Police Department
7. Two detectives on the police force.

It is alleged that on the night in question the two detectives referred to were (to quote paragraph 17 of the complaint) engaged in

"a common scheme and plan to lure, entice, provoke and entrap Negroes in the area of East Waldburg Street to present themselves in such places and positions so as to make it appear that homicide would be justified. While carrying out such scheme and plan the son of the named plaintiff herein was lured into a position where he could be and was in fact brutally and fatally rendered a victim of unjustified homicide. Then and there, the defendants, by agreement and acting in a conspiratorial manner, did assault, batter and take the life of Louis Mack."

Paragraph 11 alleges that the Mayor, City Manager and Police Chief had knowledge of the "attitudes and potential for unwarranted violence against Negroes" possessed by the Captain of the Detective Bureau and the two detectives who are sued. The complaint charges that the defendants were acting under color of statutes, laws and customs and that the acts of the two detectives, which were without reasonable cause, were committed upon the instruction, knowledge and consent of the said captain of detectives and the said lieutenant in the Police Department of the city. It is averred that defendants were engaged "in a conspiracy pursuant to a pattern and practice of discriminating against Negroes with the intent to deprive them of their civil rights * * *."

Each of the defendants moved to dismiss. The Mayor of Savannah, the City Manager, the Chief of Police, the Captain of Detectives and the lieutenant in the Police Department have also filed motions for summary judgment. The affidavits deny any conspiracy, knowledge of the event or knowledge of any disposition on the part of the two detectives for unwarranted violence against members of the Negro race.

The two sections of the Civil Rights laws principally relied on by plaintiff are:

(a) Title 42 § 1983 which provides that "Every person who, under color of any statute, ordinance * * * custom * * * of any State * * * subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * *."

(b) Title 42 § 1985 which provides, in part, a right of action for damages in the federal courts against any "two or more persons" in a State who conspire, directly or indirectly, for the purpose of depriving others of equal protection of the law or equal privileges or immunities under the laws.

■ Is the City of Savannah liable for damages under Title 42 § 1983 and § 1985 as a result of deprivation of civil rights through wrongful acts of policemen under color of law? A municipality is not a "person" under either of these sections and is not responsible for injuries or damages to another. Sutton v. City of Philadelphia et al., D.C., 286 F. Supp. 143; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Cuiksa v. City of Mansfield, 6 Cir., 250 F.2d 700, certiorari denied 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 813; Spiesel v. City of New York, D.C., 239 F.Supp. 106, affirmed 2 Cir., 342 F.2d 800, certiorari denied 382 U.S. 856, 86 S.Ct. 109, 15 L. Ed.2d 94; Ocasio v. Bryan, 3 Cir., 374 F. 2d 11; Spampinato v. City of New York, 2 Cir., 311 F.2d 439, certiorari denied,

372 U.S. 980, 83 S.Ct. 1115, 10 L.Ed.2d 144; Agnew v. City of Compton, 9 Cir., 239 F.2d 226, certiorari denied 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910; Patrum v. Martin, D.C., 292 F.Supp. 370.

I am aware that in United States ex rel. Washington v. Chester County Police Department, 294 F.Supp. 1157 a District Court in Pennsylvania said that while a municipal corporation could not be sued as such under § 1983 its liability under § 1981 stood on a different footing since "The law under that section is not as clear, crystalized and well-settled as is the judicial gloss on § 1983."[1] Here, however, the plaintiff is not proceeding under § 1981 and, further, I disagree with the notion that a municipality, which is not subject to suit for damages as a "person" by reason of deprivation of equal protection of law under § 1983 and § 1985, can be sued for damages by reason of depriving an individual of the identical rights under § 1981.

■ Nor can an action for damages be maintained here against the Mayor in his offical capacity or as an individual. According to the uncontradicted affidavit of J. Curtis Lewis:

"Deponent states that he has not at any time directed any police officers, particularly the defendants named herein, concerning the trapping of criminals or anyone else.

Deponent states that he was not present at the time of the apprehension of Louis Mack and his ensuing death and that he has no personal knowledge by his own observation of any of the incidents leading up to or relating to the apprehension of Louis Mack and his subsequent death.

Deponent states that he at no time directed or ordered the arrest, apprehension or trapping of said Louis Mack nor did he conspire with any of the other defendants for the arrest, ap-

prehension or trapping of said Louis Mack."

It was held in Jordan v. Kelly et al., D.C., 223 F.Supp. 731:

"The chief of police would not be responsible for the wrongful acts of the officer unless he was present or unless it is shown he directed such acts or personally cooperated in them, and there is no dispute but that he was not present, did not direct and did not cooperate in the making of the arrest."

In Patrum v. Martin, 292 F.Supp. 370 the complaint alleged that the defendant police officer "was acting pursuant to orders and directions from Defendant, City of Greensburg, by and through its mayor and highest executive officer, Defendant, George Huddleston, and that the mayor knew of the police officer's dangerous propensities but did not attempt to halt his course of conduct."

The District Court said:

"These allegations, containing no definite assertion of the mayor's personal participation in the wrongful acts, are not sufficient to render him liable under the Civil Rights Act."

In Tyree v. Smith et al., 289 F.Supp. 174 an action was brought for deprivation of civil rights against various public officials including members of a County Board of Education. In sustaining their motion to dismiss, the District Court stated, "No member of the Board participated in the alleged wrongs set out in the complaint. No member was present at the time the alleged wrongs occurred."

In the light of these authorities the motion for summary judgment filed on behalf of Mayor Lewis is sustained.

The reasoning of the decisions cited is equally applicable to the case of the City Manager who filed a similar affidavit to that of Mayor Lewis. The motion for summary judgment is sustained as to

---

[1]. Title 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State * * * to the full and equal benefit of all laws * * * for the security of persons * * * as is enjoyed by white citizens * * *."

Picot Floyd and is likewise granted as to Chief of Police Ryan.

The complaint alleges that Captain Murphy and Lieutenant Weaver either instructed the defendant detectives to commit the alleged wrong or that the acts were done with their knowledge and consent. The affidavits of these two officers do not deny that they instructed the two detectives to use the procedures involved. They assert lack of knowledge that Detectives H. E. Fields and J. D. Smith possessed "any attitude or potential" for unwarranted or potential violence against Negroes and they deny participation by them in a conspiracy against the deceased because of his race or color.

There is no allegation in the complaint that Captain Murphy and Lieutenant Weaver directed the two detectives to "assault, batter and take the life of Louis Mack." They were not present at the time of the homicide. The most that can be said for the loose and conclusory allegations is that the officers in question are charged with directing, permitting and being aware of the employment by the detective force of entrapment techniques calculated to lure muggers into crimes of violence.

In McGuire et al. v. Todd et al., 198 F.2d 60, at 63 the Court of Appeals for this Circuit said:

> "[W]e disregard, as mere conclusions, the loose and general, the factually unsupported, characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights * * *."

The same defenestration process I used in disposing of the suit against the Mayor and Aldermen, the Mayor, the City Manager and the Chief of Police is adopted as to Captain Murphy and Lieutenant Weaver. Their motions for summary judgment are sustained.

However, the motion to dismiss filed by Detectives Fields and Smith must be overruled. The allegations sufficiently set forth a claim for relief. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Hughes v. Smith, D.C., 264 F.Supp. 767; Jackson v. Martin, D.C., 261 F.Supp. 902. A police officer "is not immune from civil liability for acts violating constitutionally protected rights merely because such acts occurred while the officer was performing his official duties." Yates v. Village of Huffman Estates et al., D.C., 209 F. Supp. 757.

I will add some additional comments in respect to the suit against the two detectives who are the only defendants left in the case.

The answer of the defendants asserts:

> "In the period from March 1, 1968, to March 31, 1968, the Savannah Police Department reported and investigated seventeen (17) cases concerning armed robbery, robbery by force (mugging) and criminal assault (assault and battery) in an area bounded by Florance Street, Price Street, 35th Street and Gwinnett Street, which is approximately eleven (11) blocks from 35th Street to Gwinnett Street, and approximately fourteen (14) blocks from Price Street to Florance Street.

> In the period from April 1, 1968, to April 25, 1968, there were twelve (12) cases reported and investigated by the Savannah Police Department involving armed robbery, robbery by force (mugging) and criminal assault (assault and battery) in an area bounded by West Broad Street, Habersham Street, 37th Street and Bolton Street, which is approximately thirteen (13) blocks from 37th Street to Bolton Street, and approximately ten (10) blocks from Habersham Street to West Broad Street.

> This area had been routinely patrolled by the members of the Savannah Police Department. Due to the increase in criminal activity in this

area, Captain C. J. Murphy assigned additional police officers to patrol this area.

On April 26, 1968, Captain C. J. Murphy routinely assigned Detective J. D. Smith (White), Detective H. E. Fields (White), and Detective W. L. Williams (Negro) to patrol this area between the periods from 7:30 P.M. to 3:30 A.M. This assignment was made for Friday night, April 26, 1968, and Saturday night, April 27, 1968. In addition, Captain C. J. Murphy patrolled the area himself.

On Friday, April 26, 1968, around 9:35 P.M. to 9:40 P.M., while Detective H. E. Fields was patrolling in the dark area of Waldburg Lane and Abercorn Street, he was approached by three (3) negro males, while, he, Detective Fields, was leaning against a utility pole. Louis Mack was the largest of the three (3) males and was around Five Feet, Nine Inches (5' 9") tall and weighed around One Hundred Sixty-five (165) to One Hunderd Seventy (170) pounds. Louis Mack asked Detective Fields if he was sick and Detective Fields nodded his head in a vertical direction. Louis Mack asked Detective Fields if he had been drinking and received the reply "yes." In turn, the reply was made to Detective Fields that "we have been drinking, too." At this time, Louis Mack suddenly and violently grabbed Detective Fields by the right arm. Louis Mack then pinned both of Detective Fields' arms behind him and threw him (Fields) backwards to the ground. The other two males were on each side of Detective Fields, and one grabbed the left rear pocket where Detective Fields kept his pocketbook, tearing the pocket. The other male snatched the police radio out of the right rear pocket of Detective Fields; the radio was a police portable radio valued at Five Hundred ($500.00) Dollars. Detective J. D. Smith, who was also patrolling the area, ran up to assist Detective Fields, and yelled "Police Officers, Halt." After Detective J. D. Smith yelled "Police Officers, Halt," Louis Mack lunged over Detective Fields toward Detective J. D. Smith. Detective J. D. Smith fired his police service revolver, aiming the revolver at Louis Mack's legs. This shot actually struck Louis Mack on the right leg. Louis Mack, still lunging at Detective J. D. Smith, wheeled to the right of Smith and continued to try to attack Detective J. D. Smith. Detective J. D. Smith fired another shot, which struck Louis Mack in the right side of the back. The Coroner's report indicates that the shot that struck Louis Mack in the right side of the back was the fatal shot.

Louis Mack turned and ran in a Northeasterly direction across Waldburg Lane for a distance of about fifty (50) feet from where Detective Smith was located. Detective Fields fired several shots at the felon fleeing in the darkness, inflicting superficial wounds, all in the performance of his lawful duties. The other two attackers fled South on Abercorn Street, across Abercorn Street, and continued in a Westerly direction.

If these averments in the answer filed by Fields and Smith are true I would think that instead of being sued these police officers should be complimented on their courageous performance of duty. We will soon have an opportunity to find out whether there is any merit in plaintiff's suit. The case is peremptorily assigned for trial at 10:00 o'clock A.M., Monday, August 11, 1969.