Aleja Perez **HERNANDEZ**, as parent and next friend of Victor Soto and Eladio Soto, minors, Angelito Rivera, as brother and next friend of Papo Pagan, a minor, Manuel Ingles, and all others similarly situated

v.

Alfred **NOEL**, Mayor of the City of Willimantic, John Connor, Richard Nassiff, Roger Baker, Fred Rodgers, Nathan Mandell, Richard Boyden, Joseph Seretny, Members of the Common Council of the City of Willimantic, Martin Viullermet, Chief of the Willimantic Police, Loren Rambush, Denny Gillespie, Officers of the Willimantic Police Department.

Civ. No. 13940.

United States District Court,
D. Connecticut.

Oct. 21, 1970.

———◆———

Bruce N. Berwald, Norman K. Janes, Tolland-Windham Legal Assistance Program, Inc., Willimantic, Conn., for plaintiffs.

William M. Krug, Willimantic, Conn., Basil T. Tsakonas, Danielson, Conn., for defendants.

## RULING ON MOTION TO DISMISS

### BLUMENFELD, District Judge.

Plaintiffs are United States citizens of Puerto Rican ancestry residing in Willimantic, Connecticut. Purporting to represent all Willimantic residents of similar ancestry, they allege that defendants have deprived them of certain constitutional rights in violation of the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, 1985(2), 1986 and 1988, and seek injunctive relief against future violations. The defendants are the chief of police of Willimantic, two police officers, the mayor, and seven members of the common council. The mayor and the seven council members have moved for dismissal on the grounds of lack of jurisdiction and failure to state a claim against them upon which relief may be granted.

### *Jurisdiction*

Plaintiffs allege deprivations, under color of state law, of rights secured by the first, fifth, sixth, and fourteenth amendments to the federal Constitution. Plaintiffs having invoked the Civil Rights Act as the basis for their causes of action, it is clear that original jurisdiction over their claims for redress of those deprivations exists in the federal court under 28 U.S.C. § 1343(3). Monroe v. Pape, 365 U.S. 167, 169, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Schnell v. City of Chicago, 407 F.2d 1084, 1085–1086 (7th Cir. 1969); Lankford v. Gelston, 364 F.2d 197, 198 (4th Cir. 1966); Birnbaum v. Trussell, 347 F.2d 86, 87 n. 2 (2d Cir. 1965).

### *Failure to State a Claim*

In support of their motion for dismissal, the mayor and council members argue that the complaint does not specify any conduct which would make them liable as individuals; and that, considered as an entity comprising the city government, they cannot be regarded as a "person" for purposes of liability under the Civil Rights Act.

### A. *The Complaint*

To bring the issues into sharper focus, it is necessary to outline the scheme of the complaint and the manner in which these defendants fit into that scheme. The gravamen of the complaint is that all defendants, individually and in concert, under color of state law, have subjected and are subjecting plaintiffs and their class to a systematic pattern of harassment, intimidation, discrimination, and violent conduct solely on account of their ancestry and in violation of their constitutional rights.

Three specific incidents are set out in the complaint. Each involves the arrest of one or more of the individual plaintiffs by defendant police officers Rambush and Gillespie. The arrests are said to have been made with undue violence, without justification, solely for the purpose of harassment, and in denial of spe-

cific constitutional rights. Plaintiffs allege that these three incidents are typical of the conduct of the two named officers as well as others in the Williman-tic police department (the latter unknown officers being represented as defendants by the police chief, who is also sued in his individual and official capacities).

Plaintiffs next set out eight specific allegations of police conduct[1] claimed to constitute the systematic pattern of harassment—of which the three specific incidents of arrest are claimed to be typical examples. That conduct is alleged to deprive plaintiffs and their class of their rights to free speech and assembly guaranteed by the first amendment, their right to remain silent under the fifth amendment, to counsel under the sixth amendment, and to due process and equal protection under the fourteenth amendment.

The complaint is divided into three "causes of action." Each contains all of the foregoing allegations. The first contains nothing more. The second alleges a conspiracy among the members of the police department, including those named and those unknown, to engage in the conduct alleged in the first.

The third "cause of action" is the only one to name the defendants who have joined in this motion to dismiss. It alleges that the mayor and members of the city council "acting as the government of the City of Willimantic," have failed or refused to act in various ways, detrimental to plaintiffs and their class. Specifically, it is alleged that these defendants ignored or refused to act on complaints about the police department; refused to provide adequate and proper municipal services to plaintiffs and their class in the same manner such services are provided to others; and permitted, by their inaction and indifference, the police department and other city departments to discriminate against plaintiffs and their class solely because of their ancestry. Finally, plaintiffs allege that these defendants, again "acting as the government of the City of Willimantic," had knowledge of the acts and conduct previously alleged but failed to exercise their lawful power to prevent the deprivation of plaintiffs' rights.

Plaintiffs' prayer for relief seeks a preliminary and permanent injunction against "defendants" to restrain them from engaging in a systematic pattern of harassment and discrimination and from engaging in any of the conduct specified in footnote 1. Additionally, plaintiffs request specific injunctive relief against the police officers. Finally, they request a preliminary injunction against the mayor and the seven council members, "as the government of the City of Willimantic, acting together and acting individually," and a permanent

---

1. The complaint alleges: "Said conduct includes, but is not limited to:

"1. Committing acts having no purpose or justification other than to humiliate, degrade, harass, intimidate, and discriminate against the Plaintiffs and the class they represent.

"2. Employing unnecessary deadly force and unnecessary physical force against Plaintiffs and the class they represent.

"3. Arresting Plaintiffs and the class they represent when no crime has been committed for the purpose of intimidation and harassment.

"4. Detaining and questioning Plaintiffs and the class they represent without arrest for the purpose of harassment and humiliation.

"5. Arresting Plaintiffs and the class they represent for the crime of loitering (Conn.Gen.Stats. § 53–179) and threatening arrest for the said crime without cause or justification in an arbitrary, capricious, and discriminatory manner and for the sole purpose of discouraging and preventing Plaintiffs and the class they represent from exercising their constitutionally guaranteed rights to free speech and assembly.

"6. Denying Plaintiffs and the class they represent their right to remain silent in violation of the Fifth Amendment of the United States Constitution.

"7. Denying Plaintiffs and the class they represent their right to counsel as guaranteed by the Sixth Amendment of the United States Constitution.

"8. Subjecting Plaintiffs and the class they represent to fingerprinting when not required by law."

injunction against the same defendants "acting together and acting individually" from failing to exercise their lawful power to prevent the deprivation of plaintiffs' rights.

## B.  *Power to Grant Relief*

In Monroe v. Pape, *supra*, 365 U.S. at 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492, the Supreme Court held that municipal corporations (in that case, the City of Chicago) were not "persons" within the meaning of the Civil Rights Act and, therefore, not subject to actions for damages thereunder. *See also*, Spampinato v. City of New York, 311 F.2d 439 (2d Cir. 1962), cert. denied, 372 U.S. 980, 83 S.Ct. 1115, 10 L.Ed.2d 144 (1963). Some lower federal courts have held *Monroe's* prohibition applicable only to damage actions, and expressly allowed Civil Rights suits for injunctive relief against cities or other municipal corporations. *E. g.*, Harkless v. Sweeny Ind. School Dist., 427 F.2d 319, 321–323 (5th Cir. 1970); Dailey v. City of Lawton, 425 F.2d 1037, 1038–1039 (10th Cir. 1970); Schnell v. City of Chicago, *supra*, 407 F.2d at 1086; Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961).

■ On the other hand, it was recently held in this circuit that the Appellate Division of the New York State Supreme Court is not subject to suit, because not a "person," in an action for equitable relief brought under the Civil Rights Act. Zuckerman v. Appellate Div., 421 F.2d 625 (2d Cir. 1970). The court in *Zuckerman* impliedly did not recognize any distinction between damage actions and those for injunctive relief in the application of the *Monroe* prohibition. Therefore, to the extent, if any, that the complaint in this case can be construed to seek relief against the City of Willimantic, even solely injunctive, it does not state a claim for which relief can be granted in this circuit.

■ A similar result must be reached insofar as the complaint seeks relief, albeit only injunctive, against the city council, considered as an entity. The common council of the city of Willimantic, as the chief governing body, is the substantial equivalent to the city itself. It has been held that city commissioners, when named as an entity, are not subject to suit under the Civil Rights Act on the theory that suits against municipalities are not authorized under that Act.[2] Henig v. Odorioso, 256 F.Supp. 276, 280 (E.D.Pa.1966), aff'd, 385 F.2d 491 (3d Cir. 1967), cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968).

■ The complaint in this case, however, names as defendants neither the City of Willimantic nor the entity known as the common council. It names, in addition to the police officers and chief, the mayor and seven members of the council *in their individual and official capacities*. Abundant authority exists for the allowance of a § 1983 suit for injunctive relief against city officials in those capacities. Carter v. West Feliciana Parish School Bd., 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970); Harkless v. Sweeny Ind. School Dist., *supra*, 427 F.2d at 323; Lankford v. Gelston, *supra*, 364 F.2d 197; Birnbaum v. Trussell, *supra*, 347 F.2d at 89. City council members, each acting in his official capacity,[3] are not the same as the city council itself.

2. A different result is apparently permitted where the entity sued is only part of the administrative machinery of a county or city. *See, e. g.*, Tinker v. Des Moines Ind. Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Escalera v. New York City Housing Auth., 425 F.2d 853 (2d Cir. 1970); Scher v. Board of Educ., 424 F.2d 741, 743–744 (3d Cir. 1970); Bomar v. Keyes, 162 F.2d 136, 139 (2d Cir. 1947).

3. These defendants have not raised the defense of official immunity. Since this is an action for injunctive relief, not damages, any such claim would fail. Harris v. Lee, Civ.No.12,459 (D.Conn. May 27,

█ Having concluded that these defendants are subject to suit under the Civil Rights Act, it remains to consider whether the acts alleged are sufficient to state a claim against them for which relief can be granted. First is the question of specificity, for under appropriate circumstances, a civil rights complaint will be dismissed when wholly conclusory. Powell v. Workmen's Comp. Bd., 327 F.2d 131, 137 (2d Cir. 1964); Valley v. Maule, 297 F.Supp. 958 (D.Conn. 1968). It is clear, however, that plaintiffs have set out their claims with sufficient specificity to survive a motion to dismiss. The three specific arrests are clearly set out, as are the types of conduct alleged to constitute a systematic pattern of harassment. (*See* footnote 1). Moreover, in reference to the moving defendants, there is no doubt what omissions are relied on for liability. Under the standards of Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959), overruled in part on other grounds Cohen v. Norris, 300 F.2d 24, 29–30 (9th Cir. 1962), the complaint is sufficiently specific. *See* Cintron v. Vaughan, F. Supp., Civ. No. 13,578 (D.Conn. Apr. 1, 1970); Harris v. Lee, Civ. No. 12,459 (D.Conn. May 27, 1968).

Finally, defendants claim that the plaintiffs have alleged nothing to specifically connect them with the incidents on which the complaint is predicated. Plaintiffs concede that the gist of their complaint against these defendants is their knowing failure to do anything about the deprivation of plaintiffs' rights by the systematic pattern of harassment allegedly engaged in by the police department. Plaintiffs also allege other failures by these defendants (e. g., to act on complaints about the police department or provide adequate services), but have alleged no affirmative acts.

In a number of recent cases seeking *damages* against police officers under the Civil Rights Act, it has been held that no liability exists unless it is alleged and proved that the officer was either present at or directed or personally cooperated in the acts relied on for liability. Mack v. Lewis, 298 F.Supp. 1351, 1353 (S.D.Ga.1969); Patrum v. Martin, 292 F.Supp. 370, 371 (W.D.Ky. 1968); Runnels v. Parker, 263 F.Supp. 271 (C.D.Cal.1967); Henig v. Odorioso, *supra*, 256 F.Supp. at 280–281; Jordan v. Kelly, 223 F.Supp. 731, 737 (W.D.Mo. 1963). *And see,* Angelo Tomasso, Inc. v. Dowling, Civ. No. 13,184 (D.Conn. Sept. 25, 1969).

█ Where injunctive relief is sought, however, no such rigid requirements obtain. In Schnell v. City of Chicago, *supra*, 407 F.2d at 1086, the court held:

"Under section 1983, equitable relief is appropriate in a situation where governmental officials have notice of the unconstitutional conduct of their subordinates and fail to prevent a recurrence of such misconduct."[4]

The Supreme Court in Burton v. Wilmington Parking Auth., 365 U.S. 715,

---

1968). *See, e. g.*, Lankford v. Gelston, *supra*, 364 F.2d 197; Cottonreader v. Johnson, 252 F.Supp. 492 (M.D.Ala. 1966). *Compare* Nelson v. Knox, 256 F.2d 312, 314–315 (6th Cir. 1958) (action for damages) *with* Birnbaum v. Trussell, *supra*, 347 F.2d at 89 (same).

4. While this language has reference to § 1983, it will be noted that § 1986, which plaintiffs invoke, expressly provides a cause of action against persons having knowledge of wrongful acts mentioned in § 1985 and who have power to prevent their commission but refuse or neglect to do so.

The court is cognizant of the affidavits submitted by defendants in support of their motion to dismiss. In effect, they are no more than a denial of the allegations of the complaint. In any event, the court is not disposed to treat these motions to dismiss as motions for summary judgment under the provisions of Fed.R.Civ.P. 12(b), and the affidavits of defendants will therefore not be relied upon at this stage of the case.

725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961), held that "no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be." Nor may a public official. Houser v. Hill, 278 F.Supp. 920, 928–929 (M.D.Ala.1968) (injunction against police chief and others to restrain them from, *inter alia*, "failing to guarantee to and give * * * plaintiffs * * * proper and adequate police protection * * *" and "allowing hostile white groups to gather and congregate for the purpose of * * * interfering with the exercise of [plaintiffs' constitutional] rights"); Cottonreader v. Johnson, *supra*, 252 F.Supp. at 499 (injunction against mayor, police chief, and sheriff to restrain them from, *inter alia*, "failing to permit and to guarantee to * * * plaintiffs * * * their constitutional right to * * * protest their grievances" and "allowing dissident elements to gather * * * for the purpose of * * * interfering with the exercise of [plaintiffs' constitutional] rights"). *See also*, Lankford v. Gelston, *supra*, 364 F.2d 197.

"An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims." Escalera v. New York City Housing Auth., *supra*, 425 F.2d at 857. And on a motion to dismiss, the allegations in the complaint must be regarded as true. Cooper v. Pate, 378 U. S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

Application of those principles requires that plaintiffs be afforded the opportunity to prove the responsibility and liability of the moving defendants which the allegations assert. Accordingly, their motions to dismiss are denied.

So ordered.