William Ronald CAMPBELL and Francis Decker Kelly, Plaintiffs,

v.

Raymond ANDERSON, Warden, Delaware Correctional Center, et al., Defendants.

Civ. A. No. 4133.

United States District Court, D. Delaware.

Dec. 28, 1971.

Thomas G. Hughes, of O'Donnell, Hughes & Lowicki, Wilmington, Del., for plaintiffs.

Francis A. Reardon, Deputy Atty. Gen., of Del., Wilmington, Del., for defendants.

## OPINION AND ORDER

LATCHUM, District Judge.

The plaintiffs, William Ronald Campbell and Francis Decker Kelly, two untried State prisoners, have brought this suit[1] against Raymond Anderson, Warden of the Delaware Correctional Center (the "Warden"), John J. Moran, Director of the Division of Adult Correction (the "Director"), Dr. Albert L. Ingram, Secretary of the Department of Health and Social Services (the "Secretary"), and The State of Delaware seeking damages for injuries allegedly sustained as a result of an assault made upon them by other inmates of the Center. The plaintiffs were permitted to proceed *in forma pauperis* and an attorney was appointed to represent them.

The complaint, as amended and particularized, alleges that the defendants negligently and/or intentionally incarcerated the defendants in the maximum security section at the Center rather than in the pre-trial building in violation of 11 Del.C. § 6526(b)[2] and as a proximate result thereof, the plaintiffs received a brutal and unprovoked beating by five or more convicted inmates as Thomas Redden,[3] a guard, stood by and did nothing to prevent the assault.

Jurisdiction purportedly exists by virtue of 28 U.S.C. § 1343(3) to redress

---

1. Originally two identical complaints were filed—one by Campbell as C.A. No. 4133 and one by Kelly as C.A. No. 4148. They were consolidated in C.A. No. 4133.

2. 11 Del.C. § 6526(b) in relevant part reads: "Special facilities and services shall also be provided for . . . those awaiting trial, as the Department deems fit and necessary."

3. More Definite Statement, par. 3.

plaintiffs' civil rights secured by 42 U.S.C. § 1983.

The defendants have moved to dismiss the case. Having considered the complaint in the light most favorable to the plaintiffs, the Court concludes that the action should be dismissed for the following reasons:

■ First, the action must be dismissed as to the State of Delaware because the State is not a "person" subject to liability under the Civil Rights Act of 1871, 42 U.S.C. § 1983. United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (C.A.3, 1969), cert. den. 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); Fear v. Commonwealth of Pennsylvania, 413 F.2d 88 (C.A.3, 1969), cert. den. 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234 (1969).

■ Second, even if it is assumed, as alleged, that the defendants violated the provisions of 11 Del.C. § 6526(b) by incarcerating the plaintiffs in the maximum security section of the Delaware Correctional Center rather than in the pre-trial building and that this placement was one of the proximate causes of the plaintiffs' injuries, it does not follow that the plaintiffs have stated a proper cause of action in this Court under 42 U.S.C. § 1983. This is so because the right violated is not a right, privilege or immunity secured by the Constitution and laws of the United States to which § 1983 specifically applies. The right which the plaintiffs seek to vindicate here is simply a state statutory right and not a federally protected right. Consequently, this Court is without jurisdiction under 28 U.S.C. § 1343(3) to redress the deprivation of an alleged State statutory right. *Compare:* Loux v. Rhay, 375 F.2d 55 (C.A.9, 1967). In so holding, this Court has heeded the Supreme Court's admonition that federal courts should "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy

v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934).

■ Third, considering the complaint most favorably for the plaintiffs, it might possibly be construed as alleging that Mr. Redden, the guard, by taking no action to stop the beating of the plaintiffs by the other inmates consented to, or tacitly approved of, the assault and thereby deprived the plaintiffs of their right, under § 1983, to be free from assault and bodily injury by persons acting under "color of law." But even if this liberal and broad construction is given to the complaint,[4] it still fails to state a good cause of action against the Warden, the Director and the Secretary because the doctrine of *respondeat superior* has no application under § 1983. That statute contemplates only the liability of persons who have personally directed or participated in the deprivation of federal rights. Dunham v. Crosby, 435 F.2d 1177, 1179–1180 (C.A.1, 1970); Bennett v. Gravelle, 323 F.Supp. 203, 214–215 (D.Md.1971); Sanberg v. Daley, 306 F.Supp. 277, 278 (N.D.Ill.1969); Mack v. Lewis, 298 F.Supp. 1351, 1353 (S.D.Ga.1969); Patrum v. Martin, 292 F.Supp. 370, 371–372 (W.D.Ky.1968); Runnels v. Parker, 263 F.Supp. 271, 273–274 (C.D.Cal.1967); Salazar v. Dowd, 256 F.Supp. 220, 223 (D.Colo. 1966); Jordan v. Kelly, 223 F.Supp. 731, 737 (W.D.Mo.1963); Pritchard v. Downie, 216 F.Supp. 621, 627 (E.D.Ark, 1963), aff'd 326 F.2d 323 (C.A.8, 1964). The present complaint does not allege or charge, directly or inferentially, that the Warden, the Director or the Secretary either personally directed, participated in, consented to, tacitly approved, or even had any contemporary knowledge of the inmates' assault upon plaintiffs or the alleged conduct of the guard in failing to take action to stop the affray.

■ Finally, if the complaint were to be considered by some stretch of the

---

4. In the absence of more specific factual allegations, the Court does not find that the complaint is fairly susceptible to this conclusory construction. Negrich v. Hohn, 379 F.2d 213 (C.A.3, 1967).

imagination as charging the Warden, Director and Secretary personally with negligent conduct in failing to prevent the inmates' attack upon the plaintiffs, it would, in this Circuit, amount to no more than a charge of tortious conduct, cognizable under State law, and would not amount to a deprivation of constitutional or federally secured rights which may be redressed under § 1983. United States ex rel. Gittlemacker v. County of Philadelphia, *supra*, 413 F.2d at 87; Fear v. Commonwealth, *supra*, 413 F.2d at 89; Ford v. Board of Managers of New Jersey State Prison, 407 F.2d 937 (C.A.3, 1969); Kent v. Prasse, 385 F.2d 406, 407 (C.A.3, 1967); Commonwealth ex rel. Gatewood v. Hendrick, 368 F.2d 179, 180 (C.A.3, 1967), cert. den. 386 U. S. 925, 87 S.Ct. 899, 17 L.Ed.2d 797 (1967).

Judge Aldisert in Gittlemacker v. Prasse, 428 F.2d 1, 6 (C.A.3, 1970) summarized the rationale of these cited cases as follows:

"These cases teach that an allegation of negligent conduct by a state public official is not sufficient, in and of itself, to bring a claim within section 1983. More is needed than a naked averment that a tort was committed under the color of state law; the wrongdoing must amount to a deprivation of a right, privilege, or immunity secured by the Constitution and the laws of the United States. And this must be set forth with specificity; mere argumentative and conclusory allegations will not suffice.

"The requirement of some semblance of factual specificity becomes necessary if the federal courts are to exercise jurisdiction under the Civil Rights Act. Without a proper allegation of constitutional deprivation, an action requesting damages for personal injuries sounds only in common law or statutory tort and, because no federal interest is involved, is triable only under state law in a state court.

\* \* \*

"[Other courts in] . . . measuring the adequacy of a claim under Section 1983, . . . have consistently held that much more is required than an allegation of tortious conduct. Many cases describe the necessary additive as 'exceptional circumstances.' In Eaton v. Ciccone, 283 F. Supp. 75 (W.D.Mo.1966), the court equated these exceptional circumstances specifically with cruel and unusual punishment proscribed by the Eighth Amendment. Such conduct was characterized in Jordan v. Fitzharris, 257 F.Supp. 674, 679 (N.D. Cal.1966) as so grossly incompetent, inadequate or excessive 'as to shock the general conscience or to be intolerable to fundamental fairness.'"

No such unconscionable or intolerable conduct is alleged in the present complaint. Indeed, it is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons. For example, during 1961, in federal prisons alone, more than a thousand assaults by inmate upon inmate occurred. 3 Bureau of Prisons (Dept. of Justice), Basic Data 49 (Rev. ed. Dec. 1961). This problem was discussed by the Assistant Director of the U.S. Bureau of Prisons in a Report on the Protection and Control of Prisoners (1962) as follows:

"We have confined in our prisons those who have been members of gangs on the outside, those who have raped, assaulted or killed, and those who simply stole cars or perhaps a letter from the mailbox. We have not found it possible to devise a system that will assimilate all these people into a compatible community wholly free of discord and occasional violence. It is my feeling that since we have in such populations men who are chronic agitators, religious fanatics \* \* \*, and people attempting to endure unbearably long sentences, that we can-

not expect to avoid occasional violence. Principal problems which assault cases involve those who have testified in court against other prisoners and thus need protection against bodily harm; supervision, separation and protection of sexual problem cases and gamblers who become involved and heavily indebted to fellow prisoners. We have had a considerable measure of success in holding such incidents to a minimum. Inmates are confronted by a sense of injustice and frustration, hopelessness for the future, sexual deprivations, and heavily laden tension factors which tend to produce violence in seemingly trivial situations. It is my honest opinion that prison officials can no more be guilty of inefficiency when disturbances or instances of violence occur than are outside law enforcement agencies when banks are robbed, people are assaulted and stabbings occur on Saturday night. A prison community is made up of people who came from these outside situations."

The complaint here fails to allege any specific facts to indicate that the assault which occurred was anything more than an isolated incident arising from normal prison tensions.