Joseph **SEIBERT**, Plaintiff,

v.

Leo **McCRACKEN**, Director, Department of Corrections, et al., Defendants.

No. 73-26 Civil.

United States District Court, E. D. Oklahoma, Civil Division.

March 7, 1974.

Joseph Seibert, pro se.

Paul Crow, Asst. Atty. Gen., Oklahoma City, Okl., for McCracken.

Roehm West, Tulsa, Okl., for Page.

Willard M. Gotcher, McAlester, Okl., for Anderson.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff, an inmate in the Oklahoma State Penitentiary, has brought this action under the Civil Rights Act, 42 U.S. C. § 1983, against Defendants Leo Mc-Cracken, former Director of the Oklahoma Department of Corrections, Park J. Anderson, former Warden of the Oklahoma State Penitentiary, and Ray Page, former Warden of the Oklahoma State Penitentiary, complaining that acting under color of state law said Defendants deprived Plaintiff of certain of his civil rights in connection with his confinement as a prisoner in said institution.

Plaintiff complains that he was placed in maximum segregation from May 26, 1970 until March 23, 1971 without charge or hearing; that he has been subjected to cruel and unusual punishment in connection with the conditions of his confinement in maximum segregation; that he has been subjected to the use of mace and that while in lockup (maximum segregation) he was not allowed to file writs, nor afforded access to the Prison Law Library nor allowed to have legal papers in his cell.

The Plaintiff seeks relief herein in the form of money damages in the amount of $15,100.00 plus $50.00 per day for the period of time held in maximum segregation as aforestated.

The Defendants have answered the complaint denying the allegations thereof. The Court has conducted an evidentiary hearing. The State of Oklahoma has voluntarily produced the Plaintiff in open Court so that he may testify regarding his complaints.

On the evidence presented to the Court the following findings of fact and conclusions of law and decisions are made herein:

(1) The Plaintiff testified to being placed in maximum segregation on May 26, 1970 and confined there and until March 23, 1971 without being notified of any charges for such confinement or being afforded a hearing in connection therewith. Plaintiff presented no evidence that such confinement was directed or participated in by the Defendants Leo McCracken and Park J. Anderson and therefore Plaintiff's evidence fails as to them in connection with this complaint. It is the general rule that an official will not be liable in a Civil Rights action unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges, and immunities secured him by the Federal Constitution. Richardson v. Snow, 340 F.Supp. 1261 (D.Md.1972). It is an essential element of a Civil Rights claim that the particular defendant be personally involved in the alleged denial of the Constitutional right. Battle v. Lawson, 352 F.Supp. 156 (W.D.Okl.1972); Townes v. Swenson, 349 F.Supp. 1246 (W.D.Mo.1972); Campbell v. Anderson, 335 F.Supp. 483 (D.Del.1971).

The evidence reveals that Defendant Ray Page was Warden of the Oklahoma State Penitentiary during the aforementioned period of this Plaintiff's confinement in maximum security. Defendant Page testified that the Chief Security Officer of the prison was the officer who placed Plaintiff and two other inmates in maximum security on the basis of reliable information that the three of them were responsible for smuggling pistols into the institution which were then hidden at some location in the institution; that the Plaintiff and the other two inmates were necessarily placed in maximum security in view of this information pending an investigation of the matter and an attempt to locate the pistols within the confines of the institution; that he concurred in this confinement and ordered his Chief Security Officer to continue the investigation and locate the pistols. Defendant Page testified that one pistol was in fact located in the institution but that the other two pistols were not located. Defendant Page further testified that the Plaintiff had a long criminal record; that he considered Plaintiff to be a dangerous prisoner, pointing to his three previous escapes from confinement and one attempted escape while in custody in a Courtroom hearing and also that Plaintiff was serving 150 year sentence for robbery with firearms and had a detainer against him from Missouri.

In United States v. Smith, 464 F.2d 194 (Tenth Cir. 1972) it is held that actions of prison officials in disciplining inmates for the protection of others and possibility of escape are not subject to judicial review in the absence of arbitrariness or caprice. The Supreme Court has recognized that summary treatment may be necessary in controlling a large group of potentially disruptive prisoners in actual custody. Morrissey v. Brewer, 408 U.S. 471, 483, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Court finds that the evidence herein does not establish arbitrariness or caprice on the part of Defendant Page in allowing Plaintiff to be placed in control status in the segregated section of the institution. The action was not to punish or discipline the Plaintiff but as administrative control essential to the safety and security of the institution. A prisoner has no constitutional right to be held in a particular facility and the courts will not undertake to supervise or review an administrative decision to transfer a prisoner from one cellhouse to another. In Evans v. Moseley, 455 F.2d 1084 (Tenth Cir. 1972) our Circuit said:

". . . the general rule (is) that the basic responsibility for the control and management of penal institutions, including the discipline, treatment and care of the confined, lies with the responsible administrative agency and is not subject to judicial review unless exercised in such manner as to constitute a clear abuse or caprice on the part of prison officials. Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969)."

Prison officials do not have to establish "probable cause" to remove a prisoner from the general population. Huguenot v. Wainwright, 464 F.2d 1077 (Fifth Cir. 1972). In Graham v. Willingham, 384 F.2d 367 (Tenth Cir. 1967) the petitioner had been confined continuously in segregated confinement in maximum security facilities for more than two years. It appeared, however, that his prison record reflected a history of participation in violent conduct and the court stated that the decision whether the petitioner was a threat to others or the safety or security of the penitentiary was a matter for the prison administrators and not the courts. In Burns v. Swenson, 430 F.2d 771 (Eighth Cir. 1970), cert. denied, 404 U.S. 1062, 92 S. Ct. 743, 30 L.Ed.2d 751, reh. denied 405 U.S. 969, 92 S.Ct. 1178, 31 L.Ed.2d 245, the prisoner was assigned to maximum security without hearing and there was no formal review for a period of two years. His history was characterized by a "lengthy criminal record, his numerous violations of prison rules, coupled with a manifestation of incorrigibility, a determined purpose to flout prison authority, and a demonstrated opposition to rehabilitation . . . ." 430 F.2d at 780. In holding the petitioner had not been denied constitutional due process the court stated:

> "It certainly does no violence to the Constitution or the sensibilities of this court, for example, for prison authorities to unilaterally and without hearing segregate riotous or troublemaking prisoners from the general prison population when the Penitentiary atmosphere is charged and tense. The preservation of security and order, both for the segregated inmates and for the general prison population, as well as the prison officers and administrators, must be allowed high priority. Here a violent stabbing and several contemporaneous assaults manifesting racial hatred among the inmates had occurred. The prison authorities apparently had reason to believe that Burns and other inmates had participated in the incident. Exigent circumstances known only to the prison officials may have required the foregoing of any hearing at the time of Burns' segregation. The remaining delay must have related to the necessities of investigation of the incident and the continued tension in the prison." 430 F.2d at 779.

Here there can be no doubt that Plaintiff was a dangerous man, made desperate by the prospect of long incarceration. Information about the introduction of firearms into the institution which had not been recovered created an extremely volatile and dangerous condition in the prison. No greater threat to the security and safety of the institution could be imagined than the combination of desperados armed with dangerous weapons. The Court feels in view of all the circumstances as shown by the evidence herein, that Defendant Page was justified in allowing Plaintiff to remain in maximum segregation while the necessary investigation and search were undertaken for a most serious and dangerous situation which could reasonably have been in the prison. Indeed, Defendant Page would have been derelict in his duty had he not approved such action as a means of avoiding an attempted prison break and the attendant danger to the lives of prison officials, other inmates and the Plaintiff himself. The Court specifically finds from the evidence and all the circumstances present that the Defendant Page as Warden of the institution did not abuse his authority and did not act arbitrarily or capriciously in separating Plaintiff from the prison population under the circumstances by placing him in segregation without the necessity of a specific charge or a disciplinary court hearing. The Court finds that this action was accomplished in this instance in the interest of security within the prison and for the protection of prison personnel and inmates and is deemed to have been accomplished by Defendant Page in his official judgment in good faith on reliable information and undertaken for valid

and reasonable purposes. Furthermore, the Court is of the opinion and finds that under the circumstances of this case the ten months of confinement with the investigation underway was not unreasonable or too extensive and the same did not violate any of Plaintiff's civil rights.

■■ (2) Plaintiff's complaint that he was subjected to cruel and unusual punishment during his confinement in maximum segregation consists of his complaint that there was only one bunk in his cell, and that he was given no outside exercise, that the cell got hot during the summer months and that he had nothing to read most of the time. He also complained of not being able to make purchases at the prison canteen and that he suffered a rash while confined for which he did receive some medication. Officer Martin who was on duty in the maximum segregation area testified that inmates could write letters; that they had some reading materials and could purchase any reading materials they desired from the canteen; that inmates were allowed showers two times per week and a change of clothing once per week; that the cells were approximately five feet by eight feet in size; that the front of the cells were open and there was a vent at the rear of the cells; that the cells were furnished with a toilet, a lavatory, water and electricity. That each cell contained a bunk and a mattress with bedding; that most inmates preferred to sleep on the floor on their mattresses which they were permitted to do if they desired; that the area was ventilated by fans and was not affected by bad odors. He testified that underclothing was given to the inmates in the cells. Graham v. Willingham, 384 F.2d 367 (Tenth Cir. 1967) in treating with maximum type segregation provides:

"Segregation, as such, is not a cruel nor unusual treatment, punishment or practice. Kostal v. Tinsley, 10 Cir., 337 F.2d 845."

Buszka v. Johnson, 351 F.Supp. 771 (E.D.Pa.1972) holds solitary confinement in and of itself is not cruel and unusual punishment. This case also requires a showing of barbaric conditions or exceptional circumstances before the Court has jurisdiction of a prisoner's civil rights complaint about maximum security cell conditions. Plaintiff's evidence fails to meet the requirements of the test set out in this case. From this evidentiary record, the Court finds and concludes that the Plaintiff was not subjected to cruel and unusual punishment by his confinement in the maximum segregation ward of the prison.

■ (3) On Plaintiff's complaint about being subjected to mace, the Plaintiff in his testimony did not remember the date. He identified Guards Littlejohn and Martin as being involved but further testified that they did not spray him but apparently he was subjected to some gas that was used elsewhere in his vicinity. On cross examination the Plaintiff testified that he was sprayed with mace but did not remember how many times. He acknowledged that none of the Defendants in this case ever sprayed him with mace. Officer Martin testified that he never used mace or tear gas on Plaintiff or his cellmate. Thus, Plaintiff presented no evidence that any of the Defendants he has sued used tear gas or mace on him. Again, it is the general rule that an official will not be liable in a Civil Rights action unless he directly and personally participates in conduct under color of State law which deprives the plaintiff of rights, privileges, and immunities secured him by the Federal Constitution. Richardson v. Snow, *supra*. It is an essential element of a Civil Rights claim that the particular defendant be personally involved in the alleged denial of the Constitutional right. Battle v. Lawson, *supra*; Townes v. Swenson, *supra*; Campbell v. Anderson, *supra*. Plaintiff's evidence supports no cognizable claim against the Defendants as to this complaint.

(4) Plaintiff's complaints about not being allowed to file writs while in lockup and not having access to the Law Library or have legal papers in his cell do not support a Civil Rights Act complaint against any of the Defendants: The Plaintiff presented no evidence that any of the Defendants directly or indirectly deprived him of this opportunity. Although reasonable access to the courts is a constitutional imperative, a state may impose reasonable restrictions and restraints on the exercise of the right such as limitations on the time and location of activities pursuant thereto. See Evans v. Moseley, 455 F.2d 1084 (Tenth Cir. 1972), citing Hatfield v. Bailleaux, 290 F.2d 632 (Ninth Cir. 1961).[1]

There was no evidence that while he was in maximum security Plaintiff ever prepared an application for legal relief, requested the opportunity to do so, or to visit the library or to correspond with any attorney or in any other way to engage in the activities protected by the Constitution and that any Defendant sued herein denied him the same. Plaintiff did not specify any particular violations or the dates thereof. Had Plaintiff desired to file a writ while in maximum security segregation he could have done the same upon his release on March 23, 1971. It was not until January 31, 1973, that the Plaintiff filed this case in this Court[2] and it, of course, is not a habeas corpus writ but is a Civil Rights action for damages. The Court takes judicial notice that previously on May 6 and October 13, 1969, the Plaintiff filed two Writs of Habeas Corpus in the United States District Court for the Northern District of Oklahoma. The first was denied on June 4, 1969, and the latter was denied on January 12, 1970. Also previously the Plaintiff filed a Writ of Habeas Corpus in the Oklahoma Court of Criminal Appeals on July 15, 1969 which was dismissed on September 24, 1969. On January 28, 1974 Plaintiff filed his third habeas corpus petition in the Northern District of Oklahoma. In total, including this case, Plaintiff has filed 12 cases in State and Federal Courts since he entered the Oklahoma State Penitentiary on February 17, 1968 all held to be without merit save the recent case filed in the Northern District of Oklahoma, which still pends. The inescapable result from this pattern of unsuccessful litigation is that Plaintiff has proved no damage even if a Defendant had acted to unreasonably deprive him of access to the Courts which the Court finds not to be the case. Moreover, any cause of action for this alleged violation occurring prior to January 21, 1971, would have been barred by the Oklahoma Statute of Limitations, 12 O.S.A. § 95, Third. Crosswhite v. Brown, 424 F.2d 495 (Tenth Cir. 1970). In these circumstances the Court finds and concludes that Plaintiff has shown no violation of his civil rights in this connection.

It is emphasized that this is an action for money damages for violation of a right occurring over two years ago and

1. This case held that a prison regulation prohibiting one confined in isolation from access to legal materials and from legal correspondence except as to pending cases was reasonable and proper and did not constitute a deprivation of reasonable access to the Courts.

2. The Court takes judicial notice that Plaintiff filed a Writ of Habeas Corpus in the Tulsa County District Court on July 13, 1972 some sixteen months after he was released from segregation which was dismissed on August 14, 1972 and filed his second Writ of Habeas Corpus in the Oklahoma Court of Criminal Appeals on August 25, 1972 some seventeen months after his release from segregation which was denied on October 4, 1972. Plaintiff filed two Writs of Habeas Corpus in the District Court of Pittsburg County, Oklahoma, one filed March 1, 1973 and dismissed March 4, 1973 and one filed October 19, 1973 and dismissed October 24, 1973. He has also filed a request for a mental examination in said Court on March 19, 1973 which was denied by an opinion and a Mandamus action on January 16, 1974 which has been dismissed. On November 8, 1973 Plaintiff filed a third Writ of Habeas Corpus in the Oklahoma Court of Criminal Appeals which was dismissed on December 5, 1973.

injunctive relief is not sought. Under the evidence there is now no institutional impairment of access to the courts by those in segregation. To entitle the Plaintiff to relief on this cause it is essential to show that he asserted the right and that these particular Defendants denied to him the requested access to courts within the period of limitations. This he failed to do.

Based on the foregoing, the Court finds and concludes that Plaintiff's civil rights have not been violated by the Defendants as claimed by Plaintiff and accordingly, Plaintiff's action should be dismissed and Judgment should be entered accordingly.