**Stephen Luther EVANS, Appellant,**

v.

**R. I. MOSELEY, Warden, United States Penitentiary, Leavenworth, Kansas, Appellee.**

**Nos. 701-70, 71-1057.**

United States Court of Appeals, Tenth Circuit.

Feb. 8, 1972.

Theodore M. Smith, of Myrick & Smith, Denver, Colo., for appellant.

Richard L. Meyer, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for appellee.

Before PHILLIPS, HOLLOWAY, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Stephen Luther Evans, an inmate in the United States Penitentiary at Leavenworth, Kansas, brought two separate actions in the United States District Court for the District of Kansas, each of which concerned the conditions of his incarceration. In each instance Evans suffered an adverse judgment and he now appeals. Although on appeal the two matters have been consolidated, each will be considered separately.

No. 71–1057 pertains to an action instituted by Evans in the district court in March 1970. This was a pro se petition and was labelled as one for habeas corpus and for ancillary relief in the nature of a declaratory judgment, an injunction and mandamus. The petition is difficult to follow, but it would appear that its main thrust is the allegation that Evans had been placed in so-called solitary confinement within the prison because he was a black. Minor complaint is also made about the fact that certain legal materials were allegedly taken from him.

On the basis of these several allegations, the trial court issued an order to show cause to the respondent, namely, the then warden of the penitentiary, the trial court noting that "some allegations, if true, are of constitutional magnitude." Thereafter, the warden filed an answer which generally denied the allegations contained in Evans' petition and affirmatively alleged that Evans had been placed in the "control unit" because of his continuing efforts to organize within the prison walls, over the objections of the prison authorities, a chapter of the Black United Front.

Upon trial, Evans, who was then represented by court appointed counsel, as well as several other prisoners who had also brought suit, testified at considerable length concerning the matters alleged in the pleadings. In opposition to such testimony, the trial court also received the testimony of numerous prison officials. In detailed findings and conclusions the trial court held, in essence, that Evans was not being subjected to cruel and unusual punishment and that none of his constitutional rights were in anywise being violated. In line with its findings the trial court entered a judgment and order dismissing the action and from such judgment and dismissal Evans now appeals.

No. 701–70 pertains to a proceeding subsequently brought by Evans, again pro se, in November 1970. This second action was labelled as one for an injunction and mandamus and the gist of this particular proceeding was that on August 25, 1970, the prison officials had allegedly taken from him all his law

books and materials which he was then using to prepare legal papers whereby he proposed to seek judicial redress of his various grievances. The petition contains a suggestion that in so doing the prison officials were retaliating for his having brought the earlier proceeding. It is difficult to tell from the petition whether these confiscated books and materials were also being used to assist other inmates in securing a judicial redress of their grievances. In any event, the trial court summarily dismissed this petition "without prejudice," on the ground that Evans had failed to exhaust the administrative remedies said to have been provided by the prison authorities. Evans now appeals the judgment of dismissal.

In this court counsel frames the issues to be resolved as follows: (1) Is it constitutional for a prison inmate to be placed in solitary confinement solely because he is black? (2) Does a prison inmate have a constitutional right to communicate by letter with an attorney at law? And (3), does a prison inmate have a constitutional right to have in his possession legal books and papers which he is using to assist himself and others in seeking a redress of their grievances? We shall consider these matters severally.

■ The question as to the propriety of Evans' confinement in so-called solitary is raised in No. 71–1057. As indicated, in that particular proceeding the trial court held a full hearing into the matter of Evans' confinement and concluded that Evans was not being subjected to cruel and unusual punishment and that the prison officials had not acted arbitrarily or capriciously in transferring Evans to what they called the "control unit," as opposed to "solitary." We agree.

We find nothing in the record to support the claim that Evans was thus confined solely because he was black. On the contrary, the evidence was that Evans was transferred to the control unit because he (and others) was apparently bound and determined to establish within the prison a chapter of the Black United Front against the wishes of the prison authorities. Additionally, the evidence indicated that the group dedicated to forming the chapter of the Black United Front was becoming more and more belligerent in their attitude and the fact that Evans did not himself engage in the fights which did occur nor participate in a march on the warden's office does not absolve him. The evidence adduced upon hearing clearly establishes that Evans was a part of the group that apparently would establish the chapter of the Black United Front regardless of the desires of the prison authorities. In his petition, Evans alleged that though he initially was not interested in the movement, he indeed later did become "involved in the group."

■ Based on the record, then, we cannot say that the prison authorities acted arbitrarily or capriciously in their efforts to avert what they deemed to be a potentially explosive situation. Nor is there anything in the record before us to support the contention that Evans' confinement, whether it be called "solitary" or a "control unit," amounted to cruel and unusual punishment. Accordingly, this phase of the controversy falls well within the general rule that the basic responsibility for the control and management of penal institutions, including the discipline, treatment and care of the confined, lies with the responsible administrative agency and is not subject to judicial review unless exercised in such manner as to constitute a clear abuse or caprice on the part of prison officials. Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969). We find no clear abuse or caprice on the part of the prison officials in transferring Evans to a more restricted and confined area than that enjoyed by the general prison population.

■ The issue as to the constitutional right of Evans to write an attorney also arises in No. 71–1057. As a part of his efforts to establish a chapter of the Black United Front, Evans wrote a letter to an attorney in Wichita seeking the latter's assistance in forming the chapter. It would appear that the Wichita

attorney was himself a member of the Black United Front, and Evans and his fellow inmates desired to solicit his help in their efforts to establish a chapter inside the prison. The prison officials refused to forward this letter and Evans claims he had a constitutional right to have his letter mailed to the Wichita attorney. We disagree.

In LeVier v. Woodson, 443 F. 2d 360 (10th Cir. 1971), we recognized as a "narrow exception" to the general rule the right of a prisoner to correspond with his attorney, or the courts, or appropriate state officials, regarding the legality of his conviction or the condition of his incarceration. This exception, however, is not sufficiently broad to include the right of a prisoner to correspond with an attorney on *any* subject. In the instant case, in writing an attorney with whom he apparently had no prior acquaintance, Evans was not complaining about the legality of his incarceration nor about the conditions of his imprisonment, as such. Rather, he was seeking outside help in an effort to establish within the prison an organization which the prison officials did not want. Such being the case, this particular phase of the controversy is governed by the general rule that the regulation of the flow of mail from a penal institution is essentially an administrative matter for prison officials and their action in regard thereto is not subject to judicial review except under the most unusual circumstances. *See* Cox v. Crouse, 376 F.2d 824 (10th Cir. 1967), cert. denied, 389 U.S. 865, 88 S.Ct. 128, 19 L.Ed.2d 136, (1967) and Pope v. Daggett, 350 F.2d 296 (10th Cir. 1965).

Evans also contends in each of his two actions that the prison officials took from him certain legal books and materials in violation of his constitutional rights. As concerns No. 71–1057, the evidence disclosed that the prison officials took away a copy of the Pennsylvania State Constitution which was not Evans' property, but that of the prison library. In that same case, the evidence as to the taking of other legal materials from Evans was inconclusive. Indeed, Evans himself testified that even after his confinement in the control unit he still had certain law books in his possession and that he also continued to receive advance sheets for the Federal Reporter and the Federal Supplement, to which he was a subscriber. On this state of the record in No. 71–1057 we find no error in the trial court's disposition of this particular matter.

In No. 701–70, filed in the trial court several months after the hearing on his earlier petition, Evans alleged that all his legal books and materials had been taken from him by the prison officials and that he was advised he would have to "send at least two-thirds (⅔) of his law books and legal materials home." This was summarily dismissed by the trial court on the ground that Evans had not exhausted the administrative remedies provided by prison rules and regulations. On appeal the application, if any, of the doctrine of exhaustion of remedies is not urged, as there is nothing in the record to indicate what, if any, administrative remedies are afforded. So, the real issue is whether the petition was sufficient to require an answer from the respondent. We hold that it was.

Though the petition be not artfully drawn, it nonetheless does allege the taking of legal books and materials which Evans hoped to use either in his own behalf or in behalf of his fellow inmates, or both, in seeking judicial redress of alleged grievances. It is well established that prison officials may not unreasonably hamper inmates in gaining access to the courts. *See* DeWitt v. Pail, 366 F.2d 682 (9th Cir. 1966), and Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir. 1961). And in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the United States Supreme Court, while recognizing the right of the State to impose reasonable restrictions on such legal activity, held that, in the absence of the State providing some reasonable alternatives, the State could not enforce a regulation barring inmates from fur-

nishing legal assistance to other prisoners. Accordingly, in No. 701–70 the trial court should have required the respondent to answer and should have then held such further proceedings as the pleadings required.

 On oral argument, counsel for Evans attempted to inject into the proceedings the issue of Evans' present eligibility for parole. Such cannot be done at this late date.

In No. 71–1057 the judgment is affirmed.

In No. 701–70 the judgment is reversed and the matter remanded for further proceedings consonant with the views herein expressed.