Jeffrey Roger MIMS et al.

v.

Milton SHAPP, Governor of the Commonwealth of Pennsylvania, et al.

Civ. A. No. 74–1101.

United States District Court,
W. D. Pennsylvania.

On Motion for Temporary Injunction
April 28, 1975.

On Motion for Permanent Injunction
Aug. 15, 1975.

---

**820**

Paul R. Gettleman, Pittsburgh, Pa., for plaintiffs.

Israel Packel, Atty. Gen., Frederick R. Nene, Pittsburgh, Pa., for defendants.

## ON MOTION FOR TEMPORARY INJUNCTION

GOURLEY, Senior District Judge.

This is a Civil Rights action in which jurisdiction is founded upon 42 U.S.C. § 1983. Plaintiffs are state penal inmates alleging various violations of their constitutional rights during their incarceration in the Behavioral Adjustment Unit (B.A.U.) of the State Correctional Institution at Pittsburgh, Pennsylvania (S.C.I., Pgh.). The immediate matter before the Court is plaintiffs' request for a preliminary injunction.

The Court has afforded the parties a full and complete hearing and has considered the arguments of counsel. Based thereon, it is the considered judgment of this Court that plaintiffs' request for a preliminary injunction should be denied. At the outset, it is well to note that in connection with this determination that the present proceeding should not be deemed a proper class action. Every inmate presents a different problem due to various factors, including age, education, previous experiences, and activities in life. Moreover, an inmate's background and training, his state of mind and general attitude, and his physical and mental capabilities all help to determine what treatment is necessary, proper, and required for him as an individual.

The facts may be briefly stated. All plaintiffs are, or have been, residents of the B.A.U. in the S.C.I., Pgh. The B.A.U. at the S.C.I., Pgh., is used for purposes of punishment and for security. In view of the purpose of the B.A.U., the furnishings are fewer and more durable than in the other cells in the S.C.I., Pgh. Inmates transferred to the S.C.I., Pgh., from other punitive segregation areas of other state correctional institutions are placed in the B.A.U. pending a review of their status, and until such time as the authorities consider the inmates capable of being transferred to the general population.[1] Those plaintiffs who testified at the hearing were, just prior to their transfer to the S.C.I., Pgh., confined in a B.A.U. in their prior institution. When prisoners confined in the B.A.U. engaged in activities which jeopardized themselves and others, restrictive measures were taken to correct the problem. The Courts should not interfere with what penal inmate supervisors feel and believe should be done in order to maintain proper obedience to the rules, regulations, and directives that govern and control the activities of all inmates. If this control was not given to penal inmate supervisors, law enforcement and punishment for offenders would disintegrate and our society would be destroyed.

■ Plaintiffs claim they are entitled to a preliminary injunction because defendants' actions have amounted to violations of their First, Fifth, Sixth, and Eighth Amendment rights; more specifically, that (1) defendants have prohibited members of the Suni Muslim faith, who are housed in the B.A.U. the right to practice their religion and have refused to permit a Muslim minister into the S.C.I., Pgh., to meet with members of the Suni Muslim faith in the B.A.U.; (2) inmates have been transferred from the general prison population into the B.A.U. at S.C.I., Pgh., without any type of disciplinary hearing; (3) defendants violated Administrative Directive 801 in their handling and conducting disciplinary hearings in the confinement of inmates in the B.A.U.; (4) plaintiffs are not given definite sentences to the B.A.U., and their release from same is completely discretionary upon the whim and caprice of the prison review committee;[2] (5)

---

1. This procedure is consistent with Administrative Directive 801.

2. This policy of indefinite sentences in the B. A. U. has been changed. Inmates placed

inmates have been denied attorney visits while confined in the B.A.U., as well as access to the prison law clinic and library; and, (6) defendants violated plaintiff Mims' constitutional right to be free from cruel and unusual punishment by placing him in a "dry cell" [3] for six days.

The Court wishes to make clear that in determining whether there has been any violation of plaintiffs' constitutional rights, it is guided by an overriding principle that:

> "To determine, with precision, those rights which follow an inmate into prison involves a process of weighing and balancing conflicting interests. The desire that there be a maximum opportunity for the exercise of rights and privileges may often collide with the practical necessities of managing and administering a complicated penal community. The task of striking the proper balance between these conflicting interests is generally within the competence of the prison authorities. Thus, the federal courts have been understandably reluctant to intervene in matters of state prison administration, recognizing that a wide latitude for judgment and discretion must be extended to prison officials." *Gittlemacker v. Prasse*, 428 F.2d 1, (3d Cir. 1970).

In determining whether to issue a preliminary injunction, the Court must look to the following critera: (1) the likelihood that plaintiffs will succeed on the merits at trial; (2) whether irreparable harm will result to plaintiffs if the injunction is not issued; (3) whether the injury to plaintiffs if the injunction is denied outweighs any forseeable harm to the defendants; and (4) public interest. *Guyer v. Cities Service Co.*, 381 F.Supp. 7 (E.D., Wis.,

1974). Very simply stated, plaintiffs have failed to meet this burden.

One of the primary functions of government is the preservation of societal order through the enforcement of criminal law, and the maintenance of penal institutions is an essential part of that task. The identifiable governmental interests at stake in this task are the preservation of internal order and discipline, the maintenance of institutional security, and the rehabilitation of prisoners. *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). To further this governmental interest it becomes necessary, if not a clear duty, for prison administrators to segregate inmates who are considered threats to themselves, others, or to the safety and security of the institution. *Long v. Harris*, 332 F.Supp. 262 (D. Kansas, 1971); aff'd 473 F.2d 1387 (10th Cir. 1973). Those plaintiffs confined in the B.A.U. at S.C.I., Pgh., were placed there by prison officials through the proper exercise of their responsibilities. The placement of plaintiffs in the B.A.U. at S.C.I., Pgh., was consistent with the institution policy whereby an inmate transferred from the B.A.U. of another institution is placed in the B.A.U. at Pittsburgh, and his status is periodically reviewed.

This Court has always been sensitive to any deprivation of a prisoner's fundamental constitutional rights. Nevertheless, this Court remains highly deferential to the discretion of the prison administrator where, as here, a reasonable disciplinary regulation is enforced with at least the minimal procedural fairness required by the Constitution. *Rinehart v. Brewer*, 491 F.2d 705 (8th Cir. 1974). No prisoner has the right to engage in conduct or any form of protest which imposes a clear and present danger of disorder

---

in the B. A. U. are now given definite sentences.

3. Because plaintiff Mims was flooding his cell, prison officials turned off all water and

toilet facilities, but he was given water when thirsty and toilet facilities were restored when necessary.

and violence. Thus, plaintiff Mims' act of flooding his cell justified the shutting off of water and toilet facilities except when needed. Likewise, when plaintiffs' actions in the B.A.U. constitute a danger even to counsel for plaintiffs, the prison administrators would have a clear duty, if not a moral one, to stop counsel until the situation is corrected. This Court recognizes that, due to the nature and purpose of the B.A.U., certain privileges and rights awarded to the general prison population are more restricted in the B.A.U. However, the Court is not persuaded that plaintiff inmates are denied access to legal counsel, legal materials, or any other Due Process considerations raised by plaintiffs.

In view of the difficulties encountered by prison officials, this Court goes along with the generally accepted view that solitary or disciplinary confinement is not per se cruel and unusual punishment. *Kostal v. Tinsley,* 337 F.2d 845 (10th Cir. 1964); *Graham v. Willingham,* 384 F.2d 367 (10th Cir. 1967); *Evans v. Moseley,* 455 F.2d 1084 (10th Cir. 1972); *Courtney v. Bishop,* 409 F.2d 1185 (8th Cir. 1969); *Sostre v. McGinnis,* 442 F.2d 178 (2nd Cir. 1971).

Placing a person in an isolation cell is a serious step that has been recognized by the Courts for some time. While it is not, of itself, cruel and unusual punishment, if the conditions are grossly substandard, it may be considered cruel and unusual punishment. The record clearly substantiates the finding that the standards in the B.A.U. of S.C.I., Pgh., do not in any way offend the evolving standards of decency that mark the progress of a maturing society. The conditions of the B.A.U. do not strike the conscience of this Court as being intolerable, nor has there been a demonstration of barbarous conduct which is revolting in the extreme. *Ford v. Board of Managers of New Jersey State Prison,* 407 F.2d 937 (3d Cir. 1969). Inmates are placed in the B.A.U. for purposes of punishment and security and confined therein in accordance with Administrative Directive No. 801. Because of the express limited purpose of the B.A.U., it only follows that the cells would contain fewer but more durable furnishings than cells in other parts of the institution.

Some deprivations are a necessary and expected result of being an inmate of an institution which must provide for the custody, discipline and rehabilitation of those who have violated the law. Prison inmates, while in the custody of prison officials, have only such rights in the practice of their religion as can be exercised without impairing the requirements of prison discipline. The record reveals that prisoners in the B.A.U., a section specifically used for punishment and security, are denied only the right to congregational prayer in the prison chapel. This Court abides with the generally accepted view that the task of determining rights and deprivations of state prisoners falls principally upon the prison authorities whose judgment in the exercise of this important responsibility the Federal Court will not ordinarily question. *Gray v. Creamer,* 465 F.2d 179 (3d Cir., 1972). A wide latitude in anticipating the probable consequences of allowing certain conduct or practices in a prison environment is essential to the proper discharge of a prison administrator's duty.

It is the considered opinion of this Court that plaintiffs failed to show the existence of barbarous conditions or exceptional circumstances which would entitle them to have a preliminary injunction issued. Moreover, this Court strongly feels that the granting of a temporary injunction in the instant case would not outweigh the harm that would result to the defendants. Defendants have the unenviable task of running a penal institution which must provide for the custody, discipline and rehabili-

tation of the inmates. It is only when the actions by prison administrators are no longer in furtherance of these aims will the Court interject itself.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

## ORDER

And now, this 28th day of April, 1975, after hearing, it is hereby Ordered that plaintiffs' request for a preliminary injunction is denied.

## ON MOTION FOR PERMANENT INJUNCTION

 In this civil rights action in which jurisdiction is founded upon 42 U.S.C., § 1983 the immediate matter before the Court is a request for permanent injunction filed by the plaintiffs. The Court will adjudicate and dispose of respondents' Motion to Dismiss filed on July 30, 1975 in the course of the Court's determination of plaintiffs' Motion for a Permanent Injunction. At the time of the hearing counsel for the plaintiffs informed the Court that only two plaintiffs of those named in the original complaint (David Scoggins and Clifford Futch) are presently inmates at the State Correctional Institution at Pittsburgh, Pennsylvania.[1]

 The Court has conducted most extensive hearings in this proceeding and plaintiffs were afforded a full and fair opportunity, in context of a hearing

on their Motion for a Preliminary Injunction, to establish their right to preliminary equitable relief. This relief was denied by the Court on April 28, 1975. The Court afforded both sides the opportunity to present additional evidence and to more fully develop their cases, yet neither side desired to present any additional testimony. Consequently, the Court could only consider that evidence presented at the preliminary injunction. It is the considered judgment of the Court that after final hearing and most exhaustive review of the record and consideration of the briefs and arguments of counsel, the situation does not appear to differ in substance or in texture so as to warrant the issuance of a permanent injunction. Likewise, plaintiffs presented no additional evidence which would lead the Court to conclude that defendants are not following and complying with the terms and provisions of Administrative Directive 801 or any other laws of the Commonwealth pertaining to prison regulation.[2]

 The only additional matter in which the Court feels necessary to comment on is the procedure to be followed when a prisoner is taken from the general population and placed in restrictive confinement. The law is firm, definite, and absolute that due process requires, except in an emergency, that advance written notice of charges be provided to inmates no less than twenty-four hours before their hearing; that an inmate be given the opportunity to be heard in person and present witnesses and documentary evidence if doing so will not jeopardize institutional safety or correctional goals; that said hearing shall be before

---

1. This being the case, the present action is moot as to all those plaintiffs previously named in the complaint who no longer reside in the State Correctional Institution at Pittsburgh, Pennsylvania.

2. Including the State law for physical exercise which provides that a person in charge of a penal institution shall provide and make

available to every person who is an inmate of the State Institution at least two hours daily, physical exercise in the open, weather permitting, and upon such days when the weather is inclement, such person shall have two hours, daily, of physical exercise indoors; provided, however, the same is safe and practical, and the judges of the several courts are to be the judges thereof. 61 P.S. § 101

a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and inmates are to be provided written statement by the fact finders as to the evidence relied on and the reason for their decisions. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, 1974. In addition, any inmate at the institution who is confined in the B.A.U. is entitled to a review of his sentence every thirty days. Administrative Directive 801. However, due process does not give inmates any right to retained or appointed counsel when said inmates are involved in prison disciplinary hearings.

Moreover, it is the considered judgment of the Court that the above due process considerations are of such a nature that they are entitled to prospective application only.

In view of the foregoing and the Court's opinion in its denial of the plaintiffs' request for preliminary injunction, which is incorporated herein, the Court can only conclude since plaintiffs presented no additional evidence that the plaintiffs failed to meet their burden of showing the need for a permanent injunction by the preponderance of the evidence.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

And now, this 15 day of August, 1975, plaintiffs' request for permanent injunction is hereby denied.

It is further ordered and directed consistent with the requirements hereinbefore expressed that David Scoggins and Clifford Futch be given a hearing, if one has not already been provided, within thirty days from the date of this order, advised as to why they are confined to the B.A.U. conditions, and after hearing given appropriate notice as to the decision made by the Board. It is

the intention of the Court that under any and all circumstances any persons including David Scoggins and Clifford Futch who are confined to the B.A.U. are to have their case reviewed each thirty days and after review advised as to the decision made and the reasons therefore.