Richard L. COXSON et al.

v.

Honorable Mills E. GODWIN et al.

Civ. A. No. 75–0088(H).

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Nov. 10, 1975.

Richard L. Coxson et al., pro se.

Patrick A. O'Hare, Asst. Atty. Gen., Richmond, Va., for respondents.

## OPINION AND JUDGMENT

DALTON, District Judge.

Petitioners are inmates at Augusta Correctional Field Unit # 10. They have filed this action containing numerous allegations concerning conditions at the Unit and the treatment accorded them by respondents, the Governor of Virginia and past and present administrative officers of the Unit. Petitioners seek injunctive relief pursuant to 42 U.S.C. § 1983. In response to petitioners' pleadings, respondents have moved for summary judgment and submitted affidavits in support of this motion.

Petitioners' first complaint charges that prisoners are being arbitrarily subjected to cruel and unusual punishment because of numerous escapes at the Correctional Unit. They state that three inmates escaped from the kitchen around August 20, 1975, due to the negligence of the guards. As a result, they state that yard privileges have been taken away from inmates with a custody status and particular prejudice is being shown against blacks. However, petitioners do not allege that any of the previously mentioned incidents have involved them. Affiant Loving answers that the withdrawal of privileges was necessary to tighten security and prevent escapes.

It is, of course, an undisputed proposition that a litigant cannot sue for deprivation of another's civil rights. *O'Malley v. Brierley*, 477 F.2d 785 (3rd Cir. 1973). Thus, petitioners have no standing to assert the rights of those

who have been subjected to said prejudice. While petitioners do allege generally "that the entire prison population is being punished because of the negligence of the state and prison officials", it occurs to this Court that the tightening of security due to recent escapes is a matter to be left to the discretion of prison officials absent a charge that petitioners themselves are being subjected to racial bias. See *Roberts v. Pepersack*, 256 F.Supp. 415 (D.Md.1966).

Petitioners' second complaint concerns the conditions at the Augusta Unit. They allege that certain of these conditions constitute cruel and unusual punishment. Among the complaints are:

1. There is no ventilation in the recreation room and sleeping conditions are excessively crowded.

2. The windows are hazardous.

3. There is no tile on the shower room floor.

4. There are no guard rails leading to the basement.

5. There are no tools in the hobby shop for use by inmates.

6. The telephone is in an area where there is no privacy and inmates are allowed only a specified number of calls a month.

■ This Court is not convinced that the living conditions portrayed in petitioners' complaint depicts conduct or conditions so dangerous or barbarous or shocking to the conscience as to give rise to a constitutional claim of cruel and unusual punishment. See *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971). Tile on the shower room floor has now been fixed. The absence of guard rails has never been cited for correction or reported for safety purposes. Both Affiants Young and Loving state that they are not aware of any area that is not properly ventilated or windows that are hazardous. Affiant Loving adds that there are twelve windows in the recreation room, none of which pose a hazard.

Petitioners have failed to state any injury that they have knowledge of as a result of said windows. They have not stated any injury that has resulted from the alleged lack of ventilation. Where there is no evidence whatsoever of any prisoner's health being affected by the alleged prison condition, dismissal is warranted. *Landman v. Royster*, 333 F.Supp. 621 (E.D.Va.1971).

■ There is clearly no constitutional requirement to provide prisoners with tools for their hobbies. The location of the telephone is a matter of uniform operating procedure as evidenced by an enclosure in the court file. This enclosure states the location of the pay telephones and the procedures to be followed in using them. These procedures do not constitute any kind of punishment that would be considered cruel or unusual in the constitutional sense.

In summary as to the complaints concerning prison conditions, this Court can find no claim that would warrant relief. There is a fine line that separates the inconveniences and discomforts that accompany incarceration and the deprivations or inadequacies that are so extraordinary as to constitute punishment in the constitutional sense. This Court is not convinced that petitioners' charges in this area have crossed into the zone of an actionable claim.

Petitioners' third complaint relates to conditions in the kitchen. Among the allegations here are:

1. Experienced inmates are not given the jobs in the kitchen.

2. There is no authorized licensed dietician in the kitchen to show inmates how to prepare and cook meals.

3. Kitchen personnel are not allowed in the basement to clean up before going to the kitchen.

4. There is no sugar used to make drinks that require it.

5. The steam table has not been promptly fixed.

6. Inmates sometimes have to wait to eat because there is not enough silverware to go around.

■ Again, this Court is not moved to find any of these conditions so cruel as to constitute a constitutional violation. Many kitchens do not have the funds to afford a full-time dietician. Affiant Loving states that there is a food service supervisor, Mr. L. P. Withers, who makes periodic inspections of the kitchen. He further states that access to the basement was denied to personnel only once through the misunderstanding of a correctional officer. This misunderstanding has now been rectified.

Affiant Loving also notes that certain inmates are denied access to the kitchen because it is thought that they will be disruptive. Such a judgment certainly is one for the discretion of prison officials and not to be overturned absent some evidence of clear abuse of discretion. *Evans v. Moseley,* 455 F.2d 1084 (10th Cir. 1972).

In response to the other charges, Loving notes that a sugar substitute is used instead of sugar in the drinks. Surely, such a minor inconvenience as this is not cognizable by a federal court. The steam table, according to Affiants Loving and Young, has been repaired somewhat and is in use as a serving table. The silverware situation is largely a result of the loss, destruction, or removal of these utensils. A short wait for dinner is an inconvenience, but also not a cognizable claim.

Petitioners' fourth complaint concerns working conditions. They complain that:

1. Inmates have to work ten hours a day and when they do not work they are charged with refusing to work.

2. If an error is made in the monthly earnings, it is not corrected until the following month.

3. Inmates who work in the kitchen and the cell-house have to work 365 days a year.

■ Again, this Court will caution petitioners that they have no standing to assert the rights of other prisoners. Assuming petitioners themselves are undergoing these work routines, this Court still finds nothing unusual about it from an average acceptable prison life. While long hours and hard work are not enjoyable always, they clearly are conditions that one submits himself to by the commission of a crime. Absent any evidence that these conditions result in serious injury or are arbitrarily applied, no intervention is warranted. Furthermore, the four separate ten-hour work days which make up a forty-hour work week, for those on the road gangs was established to coordinate with the State Highway Department schedule. Affiant Loving further adds that those who do work all year round do light jobs and not hard labor. As for the other charges, this Court shows no surprise or sympathy for the fact that one who does not work is charged with refusing to work or that errors in the payroll cannot be corrected until the next payroll is issued.

Petitioner's fifth complaint centers around the medical aid and attention received at the Augusta Correctional Unit. Among the allegations are:

1. The doctor assigned to the unit will not examine various inmates after certain hours on Mondays and Thursdays.

2. There is no sick room for recovery from an illness.

3. There is no nurse on duty.

4. Various non-prescription drugs are not stocked at the institution.

5. Inmates have to wait twenty to thirty minutes before obtaining their medication.

6. There are no late night emergency facilities available.

This Court has always been very concerned about complaints concerning the medical treatment of prisoners. However, it occurs to this Court that petitioners are not challenging medical care accorded to them, but complaining of the conditions in general. Since such conditions may have adverse affect on the petitioners as individuals themselves, this Court is willing to skip over any potential problems of standing here without further investigating such problems.

Courts are in general agreement that some essential medical care must be available for inmates, although there is by no means any consensus as to the precise amount. This Court cannot agree with the extravagant assertions by complainants that these conditions warrant injunctive relief. It is an undisputed fact that Affiant Fox, M. D., is on duty twice a week to see prisoners for medical problems. Although it may be necessary to refuse to see certain inmates after his working hours, this is done only when immediate medical attention is unnecessary. Complete emergency facilities are available at all times at nearby King's Daughter Hospital.

Such problems as a lack of a full-time nurse, a recovery room, or a stock of certain drugs are a function of the financing of penal institutions. There is no charge to suggest such conditions have resulted in further illnesses or death. If a prisoner needs to be isolated for recovery, he is taken to Staunton or to the State Penitentiary Hospital in Richmond. Again, this Court sees these complaints as merely a disagreement on the part of these inmates with certain uncomfortable, but certainly minimally acceptable standards. There does not appear to be any set of facts petitioners could prove to establish these charges that in turn would violate the Constitution. *Edwards v. Duncan*, 355 F.2d 993 (4th Cir. 1966).

Petitioners have also made charges with respect to the opening and reading of their mail. These allegations are being disposed of in a previous complaint and opinion filed in this Court, *Coxson v. Landes*, # 75–57 (W.D.Va., 10/23/75). In summary, this Court makes the general observation that petitioner's broad scale attack on various aspects of prison life at the Augusta Correctional Unit smacks of being a total disagreement with prison life in general. Incarceration, of course, is a very difficult experience to endure, and the federal courts

have been appointed as watchdogs to assure that prison life not be permitted to cross the border from humane to inhumane. However, this does not mean the judiciary is to order corrective measures each time a matter comes to its attention that might be unusual to the average free citizen. None of the conditions described in petitioners' complaint, either singularly or as a whole, appall or shock this Court as being so extraordinary as to violate constitutional guarantees.

This Court finds that petitioners have failed to submit claims of constitutional merit and orders this action dismissed. None of the facts or conclusory allegations, petitioners have offered to prove would change the results. *McComb v. Southern Weighing and Inspection Bureau*, 170 F.2d 526 (4th Cir. 1948). Summary judgment is granted to respondents and this case is to be stricken from the docket.