**Jerry E. TAYLOR, Plaintiff,**

v.

**Jesse W. STRICKLAND et al., Defendants.**

**Civ. A. No. 75–1944.**

United States District Court, D. South Carolina, Columbia Division.

Feb. 23, 1976.

Jerry E. Taylor, pro se.

Emmet H. Clair, Asst. Atty. Gen., Columbia, S. C., for respondents.

## ORDER

HEMPHILL, District Judge.

Plaintiff is a criminal [1] presently residing at the Central Corrections Institute of the Department of Corrections of the State of South Carolina. His complaint, filed October 31, 1975, leaves much to be desired, as the form which was furnished to the plaintiff by the Clerk of this Court was not properly filled in; it contained only a statement of the facts, which were presented in the complaint as follows:

I was promised a transfer to some other institution for getting some zip guns for the above named; I got for them 3 guns, bullets and shotgun shells, I was allso stabbed while trying to get a 32 pistol. I was put here in Cell Block 2 on lock up where I have been the past few months. I all so helped stop a escape. My life is in danger every day I am here at C.C.I., I have been gassed while brushing my teeth and my weekend visits have been stopped all so. I have did no crime and I might have even saved some officers life with my actions, I am locked up 24 hours a day except

1. On December 12, 1973, the Honorable J. B. Ness, then a presiding South Carolina Circuit Judge, sentenced the defendant to fifteen years after the latter's conviction of assault and battery with intent to kill, and imposed a concurrent sentence of fifteen years for housebreaking and larceny. On December 19, 1973, Judge Ness, then presiding Judge of the Court of General Sessions for Richland County, S. C., sentenced the plaintiff to concurrent sentences on charges of escape, malicious mischief, possession of tools to facilitate escape, two counts of assault and battery of a high and aggravated nature, and two counts of pointing a firearm and shooting into a dwelling. From 1968 to 1972, petitioner served a term for housebreaking, larceny, escape and narcotics offense. From 1960 to 1967, he served a term for housebreaking and larceny. South Carolina has no recidivist statute for habitual or incorrigible criminals.

for two showers a week, and I have did nothing to be punished for.

\* \* \* \* \* \*

(State Relief Requested:) I request that I be took off of lock up and transfered to Kirkland Correctional Institution, are a open institution like I was promised, and be allowed to visit on week ends like every one else.

Before the complaint was given a file number, or filed, it was submitted to this court and on October 30th plaintiff was allowed to proceed in forma pauperis. On November 24, 1975, the defendants filed their answer containing four defenses, the first defense of which is that the complaint fails to state a claim upon which relief can be granted in this forum; the second defense is that the alleged federal question is frivolous and insubstantial; in the third defense defendants deny that any constitutional right of the plaintiff has been violated or that defendants are accountable for any willful or malicious acts toward plaintiff, and a fourth defense sets forth the facts which are a denial in the record.

The continuous criminal history of the plaintiff reflects that he was admitted to CCI in 1974 and indicated at that time his apprehension on being assigned to the Central Correctional Institution. Sometime in 1974 plaintiff contacted Strickland and promised to produce a gun, but no gun was ever produced or found. In 1975, he contacted defendant Craft with reference to locating and turning in several zip guns and did get the parts for the assembly of two zip guns but no other gun or gun parts were produced. He was not stabbed but on February 15, 1975, had a superficial cut on his chest for which there was no indication of the cause. (It could not be determined whether it was self-inflicted or not.) In his medical history he reports a stab wound in the left leg but there is no indication that any such thing occurred at the Central Correctional Institution. On June 24, 1975 he was given a small treatment of mace because of his disobedience and an apparent threat when he had something in his hand which appeared to be a weapon and was not revealed to be harmless until after the mace was employed for disciplinary purposes; it does not appear that this was serious. Plaintiff is in protective custody at his own request and has visitors in accord with that sort of detention. Affidavits of the correctional officers fully support the proposed defense. There is in the record a letter from the petitioner-plaintiff to Clerk of Court Miller C. Foster which attempts to refute some of the affidavits but the document is not under oath and there is nothing to justify any credibility.

Except for the opinion in *Sweet v. South Carolina Department of Corrections,* 529 F.2d 854 (4th Cir., Decided December 1, 1975) this court would dismiss the entire matter on the first grounds. In *Sweet* the Fourth Circuit annointed the District Court of South Carolina with the onerous task of deciding what exercise time and how many showers a prisoner should have.[2] The court finds, however, that he is really not complaining about his showers, although he may well appeal the decision of this court that the showers are not a constitutional question, but, perhaps, in the meantime, the District Court for the District of South Carolina can employ its precious time and talent in the research and study of the shower bath as a constitutional privilege with which the criminal, or any other mad dog of society, must be supplied. Since the opinion in *Sweet* did not indicate whether or not it was a constitutional deprivation to deny a prisoner 2½ baths a week instead of two baths, and did not say whether the baths should be given on Monday and Tuesday, or Monday and Friday, (we should reserve one bath period for the ancient practice of washing on Saturday night)

---

2. It is not impractical to conclude that the plaintiff knew of Sweet's complaint about the showers. Fortunately for the coddled prisoners of today, they are not living in an age when the average male took a bath once a week, whether he needed it or not.

this court is at some loss to determine the constitutional deprivations. A review of history of the Constitution does not reveal whether the Saturday night delight of old days ever reached the status of constitutional consideration, and it does not reach it in this court. In an abundance of precaution, however, the court will continue to consider the other issues supposedly raised.

The second defense relies on the language of Congress in enacting 28 U.S.C. § 1915(d).[3] Unfortunately for the purposes of this treatment, we have no appellate level definitions of "frivolous," but it appears from the affidavits that the entire claim is frivolous and it has no constitutional dimension of any kind. Plaintiff claimed an undertaking to locate illegal weapons at CCI; according to the affidavits of Jesse W. Strickland and A. G. Craft, this claim is magnified all out of proportion by plaintiff, and presents no constitutional question. The gassing incident is an isolated case involving the limited use of mace when an officer thought he was confronted with a weapon in the plaintiff's hand when plaintiff refused to leave his cell during a shake-down.[4] Plaintiff has been treated for one superficial wound. Plaintiff alleges he was "stabbed while trying to get a .32 pistol," but the medical report shows that plaintiff was given first-aid for a superficial cut on February 15, 1975. Plaintiff's complaint about the stab wound borders on the ridiculous when compared to the information provided by the medical report.

As to the third defense, there are no actions, except the mace incident, which might be cataloged as actionable under 42 U.S.C. § 1983, despite the abortion and profligation of that statute by permissive appellate decisions. The incident of the mace appears to have been, without contradiction, in necessary pursuit of prison discipline. This appears to be an isolated encounter involving plaintiff and two correctional officers,[5] neither of whom has been named as a defendant herein.[6] Although the pleadings and affidavits do not fully resolve the factual issue of precisely what occurred during the June 1975 cell shakedown, plaintiff's version of the scuffle does not reflect a clear constitutional claim absent any indication of injury to plaintiff or a risk that plaintiff may be subjected to an unconstitutional application of physical force without legal provocation in the future if he remains in his present custody status.

If the allegation about the macing incident can properly be excised as a claim of constitutional dimension, the plaintiff's claim is reduced to a request for a transfer. By implication, plaintiff is as-

---

**3.** 28 U.S.C. § 1915(d) provides: Proceedings in forma pauperis.

The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or *if satisfied that the action is frivolous or malicious.*

**4.** The affidavit of W. R. Sellers and the incident report of June 24, 1975 by officer John Edwards about the use of gas mace to complete a shake-down of plaintiff's cell on that date, indicates that what Sellers thought at the time might be a weapon turned out to be only a toothbrush, but both officers asserted that plaintiff refused an order to leave his cell, and Sellers avers that plaintiff apparently flushed the toilet in his cell during the incident as a means of disposing of pills of an undisclosed nature. Neither of these two officers is named by plaintiff as a defendant.

**5.** See the affidavit of W. R. Sellers.

**6.** The superiors of Officers Sellers and Edwards would not be liable to plaintiff for damages unless he alleged the personal involvement of such officials. *Barrow v. Bounds,* 498 F.2d 1397 (4th Cir. 1974). It appears that Taylor is not specifically requesting money damages in this case. Although in his unverified letter-reply, Taylor asserts that the incident was more aggravated than the version depicted in the defendants' answer and affidavits, he still alleges no lasting injury suffered during the scuffle, and he has not alleged any facts from which the Court can reasonably infer that a repetition of the incident seems likely to occur if he remains in his present area of detention.

If, in a given confrontation, the use of gas is preferable to exposing both a prisoner and guards to possible serious injury during a scuffle, no actionable wrong occurs. *See Christian v. Anderson,* 381 F.Supp. 168, 170 (E.D.Okl. 1974).

serting that while his life is in jeopardy so long as he remains at CCI, where he cannot safely rejoin the general inmate population; that he would be safe if he were transferred to another institution. Defendants insist, on the other hand, that plaintiff can request a transfer to another institution from a "transfer board which may or may not approve the transfer depending on numerous factors such as the inmate's record and the availability of space . . . ." (para. 8, p. 4 of answer).[7] The issue on this point crystallizes into that of whether on the facts as presented here, plaintiff has a constitutional right to be transferred away from CCI. If he does, his claims about the conditions of his confinement in Cell Block 2 would become moot. If not, then the court must determine whether those conditions are proscribed by the Eighth Amendment ban of cruel and unusual punishment. *Sweet, supra,* at 859.

Except for the reasoning in *McCray v. Burrell,* 516 F.2d 357 (4th Cir. 1975), the present action would appear to be one in which the plaintiff is required to request a transfer through administrative channels before seeking relief in this court. However, the language of *McCray* is susceptible to no other interpretation than a clear holding that, in the Fourth Circuit, no prisoner needs to seek an administra-

tive remedy before filing suit under 42 U.S.C. § 1983. As Judge Widener observed in his concurring and dissenting opinion in that case (joined by Judge Russell), requiring a habeas petitioner who seeks liberty to exhaust state remedies while not requiring a prisoner complaining of the conditions of his confinement to avail himself of administrative remedies is difficult to reconcile with general law on the subject of exhaustion of remedies.[8]

To the extent that *Breeden v. Jackson*[9] and *Sweet v. Department, supra,* hold that a prisoner in the isolated status of protective custody has no constitutional claim, the court feels justified in ruling here that Taylor has suffered no constitutional injury by being confined in Cell Block 2 at his own request. A custody classification is not a constitutional issue[10] and a prisoner has no constitutional right to be held in a particular facility.[11] It seems clear, therefore, that plaintiff asks more than this court can grant when he seeks the equitable aid of the court to obtain a transfer that he has apparently not even sought from his custodians. For this court to direct where state prisoners are to be assigned within the Department of Corrections would be an intrusion into the management of prisons that the majority opin-

---

**7.** The defendants have not alleged that plaintiff can be released from Cell Block 2 upon request. Presumably, they recognize that plaintiff may be in some danger if released to the general population at CCI, or they are concerned for their own responsibility to protect plaintiff from danger. *See Sweet, supra,* at 858. Since neither plaintiff nor defendants allege that plaintiff's safety would be compromised if he were moved away from CCI, the possibility that reprisals against plaintiff may be attempted by other prisoners if plaintiff is sent to an open institution does not seem to be a factor in this case.

**8.** In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), Justice Powell wrote of the lamentations in high places of those who are concerned about the proliferation in the mass of frivolous cases now being filed by prisoners. See fn. 9, 416 U.S. at 404–405, 94 S.Ct. at 1807, 40 L.Ed.2d at 235. One

suggestion he attributed to the Third Circuit Judicial Conference was "abstention where appropriate to avoid needless consideration of federal constitutional issues."

In *McCray,* supra, 516 F.2d at 365, Judge Winter, after an exhaustive review of precedents, noted, "Our duty is clear: We must follow the Supreme Court, not attempt to lead it. We must hold that exhaustion is not required." The Supreme Court has granted certiorari (18 CrL 4045), and an opportunity is now available for the Supreme Court to decide the question with some degree of finality.

**9.** 457 F.2d 578 (4th Cir. 1972).

**10.** *Palmigiano v. Mullen,* 491 F.2d 978 (1st Cir. 1974).

**11.** *Seibert v. McCracken,* 387 F.Supp. 275, 278 (E.D.Okl.1974); *Bundy v. Cannon,* 328 F.Supp. 165, 173 (Md.1971); and *Verde v. Case,* 326 F.Supp. 701, 704 (E.D.Pa.1971).

ions in *Breeden* and *Sweet* both state to be impermissible.[12]

It is much more difficult to dispose of Taylor's claims about the condition of his confinement and protective custody in the wake of *Sweet, supra.* If it is ultimately determined in that case that two showers, or 2½ showers, or 2 hours, or 3 hours, exercise a week are inadequate for a prisoner held in protective custody in CB2 for 5 years, a question could arise as to the maximum length of time a CB2 inmate may be held with that prison regimen of bathing and exercising in effect.[13] The imposition of some schedule on a prisoner who has spent a year or more in CB2 may well raise the same constitutional issues sensed in *Sweet* if the prisoner faces the prospect of continued confinement in protective custody. If in *Sweet* it should be determined ultimately that the exercise and bathing schedule for CB2 inmates passes constitutional muster for a prisoner confined there for five years, *a fortiori*, plaintiff would have no 1983 claim on the basis of the pleadings as to those issues. The issue concerning visitors poses no discernible constitutional issue; Taylor can have visitors once every two weeks on Mondays through Fridays.[14]

This court has attempted, with considerable misgivings, and a horrendous loss of judge time, to consider the issues which plaintiff seeks to raise. Even if the factual edge showed some

discomfort and disciplinary deprivations, this court is of the opinion that the accumulative effect does not place the issues within the ambit of any constitutional guarantee or amendment and plaintiff is entitled to no relief.

But this case is distinguishable from *Sweet.* Plaintiff wants out of protective custody only because he wants a transfer away from CCI. His pleadings emphasize this aspect of his case, and the claims about the conditions of his confinement are subordinated to his desire to be transferred. By contrast, the plaintiff in *Sweet* was preoccupied with conditions of his confinement in protective custody. Taylor never raised a *Sweet* exercise issue, *per se.* As observed earlier, it is possible to infer it from his complaint, especially now that *Sweet* has been decided by the Court of Appeals, but this construction may be strained. A majority opinion in *Sweet* suggests that two showers a week for inmates in CB2 are adequate, and that the issue of showers was included in the remand only because it was includable in the health issue presented by limited exercise.

The plaintiff's petition is dismissed without prejudice. He, of course, can reinstitute his suit if he can allege facts which give rise to a valid claim that his health is threatened with impairment solely because of the conditions of his confinement in protective custody.[15]

---

**12.** It might be well to note here that a United States District Judge in sentencing a federal prisoner, can only recommend a particular facility; the ultimate authority for placement is lodged by the Congress with the United States Bureau of Prisons.

**13.** Is the next opinion going to require the district judge to say how many times a prisoner should brush his teeth, go to the bathroom, wipe his nose, comb his hair, or scratch? Would that the prospect were funny, or even hilarious, but the paper work flows on, and the caseload increases almost daily.

**14.** He has not alleged that the weekday visit limitation deprives him of a chance to see his family because of employment conflicts, school conflicts, etc. The pleadings at one point refer to a visit by his father, so plaintiff

seems to be the beneficiary of visitation privileges during the weekday period authorized.

**15.** Plaintiff's letter-reply is susceptible of an interpretation that correctional officers *may have* actively encouraged plaintiff's "undercover" work to expose the presence of firearms in the prison. The answer, as noted earlier, plays down the role of the prison officials, and depicts plaintiff as nothing more than a volunteer in the venture, inferentially a volunteer who was seeking to curry favor with CCI officials by even going so far as to import a contraband weapon so he could "uncover" it for guards.

If defendants actually solicited plaintiff's good offices, however inept, in an undercover effort to find contraband deadly weapons, then an issue surfaces that was not present in *Bree-*

This case presents no claim upon which relief can be granted in this court. The petition-complaint is dismissed, without prejudice.

AND IT IS SO ORDERED.

den or *Sweet.* Such an issue is not apparent in the pleadings as presently filed, and this court has too much work to do to call for additional pleadings, or stir the odorous pile this and other cases of this sort present. A reading of the pleadings here gives a clearing call to some policy making court to set forth some guidelines, *practical,* and *workable,* in order to avoid the continuing and growing deluge and proliferation of petitions and claims of the kind here presented.